UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  1:13-cv-00126 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| FUNDS IN THE AMOUNT OF | ) | |
| $271,080.00 | ) | |
| | ) | |
| Defendant. | ) | |

UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO STRIKE THE PURPORTED CLAIMS OF
ABRAHAM N. CRUZ-HERNANDEZ AND PEDRO CRUZ-HERNANDEZ

The United States of America respectfully submits this memorandum of
law in support of its motion to strike the purported claims of Abraham N.
Cruz-Hernandez ("Claimant A. Cruz-Hernandez") and Pedro Cruz-Hernandez
("Claimant P. Cruz-Hernandez") for failing to comply with Rule G(5) and G(6)
of the Supplemental Rules for Admiralty or Maritime Claims and Asset
Forfeiture Actions (the "Supplemental Rules").

I.    INTRODUCTION

This is an in rem forfeiture action against $271,080 in United States
currency ("defendant currency"), which was seized on June 9, 2012, from a black
safe that also contained a drug ledger and which was seized after narcotics-
detecting canines positively alerted to the black safe containing the defendant

currency. The Government's Verified Complaint alleges that the defendant currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because, *inter alia*, it was money furnished or intended to be furnished in exchange for a controlled substance, and are the proceeds from the sale of a controlled substance, and were monies used, and intended to be used, to facilitate narcotics trafficking, in violation of 21 U.S.C. § 841, *et. seq.* Verified Complaint (Doc. 1), at 2.

On February 11, 2013, the Claimants filed purported claims to the $271,080.00 in United States currency at issue. (Doc. 7). The Court should strike those purported claims because they are legally and factually deficient for at least three reasons:

- First, Claimants' claims fail to meet the basic requirements of Supplemental Rule G(5)(a)(i), which requires that a claimant not only assert ownership of the defendant currency, but provide some evidence of ownership to support the claim, including "how he obtained possession of the currency, including, but not limited to, the person(s) from whom he received the currency, the date of the receipt, the place of the receipt, and a description of the transaction which generated the currency." *United States v. $196,969.00 in U.S. Currency*, 2012 WL 4128035, *2-3 (S.D. Ind. Sept. 20, 2012) (Internal citation omitted.). Here, in support of their

2

claims, Claimants make only a bare assertion of ownership of the funds, but provide no evidentiary support for their claims. Accordingly, the Court should strike their claims.

• Second, Claimants have not filed answers to the Verified Complaint as required by Supplemental Rule G(5)(b). As a result, the allegations in the Verified Complaint are deemed admitted, the Claimants lack statutory standing to pursue their claims, and their claims should be stricken. *See* Supplemental Rule G(8)(c)(i)(A) (provides that a claim may be stricken for failing to comply with Rule G(5), which includes the rule requiring the filing of an answer); *United States v. $29,540.00 in U.S. Currency*, 2013 WL 308897, *6 (D. Mass. February 28, 2013) (claim stricken, in part, because claimant filed a claim but failed to file an answer, as required by Rule G(5)(b)).

• Third, Claimants have not responded to the Special Interrogatories issued by the government pursuant to Supplemental Rule G(6)(b) and which are designed to obtain information relevant to a claimant's standing to assert a claim. *United States v. $14,800.00 in U.S. Currency*, 2012 WL 4521371, *5 (D. Md.) ("Rule G(6) interrogatories serve an essential function in the asset forfeiture context by allowing the Government to test a claimant's bare assertion of standing against an evidentiary basis.").

3

Accordingly, the Claimants lack statutory standing to pursue their claims, and their claims should be stricken. *United States v. $12,812.00 in U.S. Currency, 2012 WL 4062466,* *2 *(S.D. Ohio)* (claim stricken pursuant to Rule G(8)(c) because claimant did not respond to interrogatories and thereby failed to comply with Rule G(6)); *United States v. $15,000.00 in U.S. Currency,* 2012 WL 3000649, *2 (S.D.Miss.).

II. CASE HISTORY

A. <u>Factual Background</u>

According to the Declaration of Task Force Officer ("TFO") Cesar A. Flores of the United States Drug Enforcement Administration ("DEA"), which is incorporated in the Verified Complaint, the defendant currency was discovered on June 9, 2012. (Doc. 1, ¶ 16). On that date, North Chicago Police Department ("NCPD") officers arrived at a residence located at the 2100 block of Kemble Avenue in North Chicago, Illinois, ("the Kemble residence") at approximately 1:00 a.m., in response to a 911 emergency call from a neighbor concerning an apparent home invasion at the Kemble residence. (*Id.*, ¶ 4). Upon their entry to the Kemble residence, NCPD officers discovered that the apparent intruders were not present. (*Id.*, ¶ 5). While inside the Kemble residence, NCPD officers observed, in plain view, a High Point Brand 9MM handgun, drug paraphernalia, including, but not limited to, plastic bags used to package drugs, cannabis, a

4

digital scale (which had white power residue), a knife, and zip tie plastic fasteners.  (*Id.*, ¶ 6).

NCPD officers also observed three vehicles parked in the driveway behind the Kemble residence, including a red Chevrolet minivan (the "Chevrolet Van"). (*Id.*, ¶ 7).  A Lake County Deputy Sheriff, who is also a K-9 handler, and "Conan," a canine owned by the Lake County Sheriff's Department, then conducted a narcotic odor investigation of the exterior of the three vehicles parked behind the Kemble residence. (*Id.*, ¶¶ 8, 9).  Conan alerted to the presence of narcotics on the Chevrolet Van, specifically, the areas by the lower driver's door area and the rear tailgate.  (*Id.*, ¶ 9).  Within the rear of the Chevrolet Van, which officers subsequently learned was registered to Claimant P. Cruz-Hernandez, NCPD officers observed a black safe in plain view through the windows.  (*Id.*, ¶¶ 10, 11).

Officers thereafter conducted a search of the Kemble residence and Chevrolet Van.[1]  (*Id.*, ¶¶ 13-18).  NCPD officers removed the black safe from the rear of the Chevrolet Van, and placed it away from the Chevrolet Van in an

---

[1]  Rafael Bautista and Pedro Cruz-Hernandez, occupants of the Kemble residence, each signed a consent form written in Spanish, which gave consent for NCPD officers to search the Kemble residence on June 9, 2012. (*Id.*, ¶ 12). Before searching the Kemble residence, NCPD officers also sought and obtained a search warrant from the Lake County Circuit Court on June 9, 2012, to search the Kemble residence and the Chevrolet Van.  The search warrant was executed later that day by NCPD officers.  (*Id.*, ¶ 13).

unbiased area in the grass. (*Id.*, ¶ 15). Then, a Waukegan Police K-9 Officer and "Matt," a canine owned by the Waukegan Police Department, were brought to the rear of the Kemble residence and directed to search for drugs. (*Id.*) Matt then pulled to the area of the grass where the black safe was located, conducted a narcotic odor investigation, and alerted for the presence of narcotics on the black safe. (*Id.*)

NCPD officers opened the black safe and found $271,080.00 in United States currency, which was bundled together with elastic ponytail rubber bands in increments labeled on masking tape as $5,000, which the DEA agents knew through their experience and training is consistent with the manner in which drug proceeds are bundled. (*Id.*, ¶ 16). NCPD officers also found within the black safe a handwritten drug ledger that contains various dates, names, and transactions. (*Id.*, ¶ 17).

During the search of the Kemble residence, NCPD officers recovered additional evidence, including, but not limited to, an additional safe, drug paraphernalia in the form of plastic baggies used for packaging controlled substances, and two cell phones located inside the additional safe. (*Id.*, ¶ 18).

Following the execution of the search warrant, Claimant P. Cruz

Hernandez spoke with law enforcement officers on June 9, 2012.[2] Claimant P. Cruz-Hernandez told officers that armed intruders forcibly entered the Kemble residence, searched throughout the home while making continuous demands for drugs and money, and then departed. (*Id.*, ¶ 25). Claimant P. Cruz-Hernandez also told officers the following on June 9, 2012:

(a) Moments after the intruders left the Kemble residence on June 9, 2012, Claimant P. Cruz-Hernandez went into a basement storage room to obtain a safe and then placed the safe in the rear of the Chevrolet Van. (*Id.*, ¶ 26).

(b) Claimant P. Cruz-Hernandez does not own this safe, and the safe belongs to his brother, Claimant A. Cruz-Hernandez. (*Id.*, ¶ 27).

(c) Because Claimant A. Cruz-Hernandez had previously advised Claimant P. Cruz-Hernandez that Claimant A. Cruz-Hernandez's safe contained important documents, Claimant P. Cruz-Hernandez transferred the safe to the Chevrolet Van after the June 9, 2012 home invasion to protect the safe in the event of a future home invasion. (*Id.*, ¶ 28).

(d) Claimant P. Cruz-Hernandez had no knowledge about what was contained inside Claimant A. Cruz-Hernandez's safe. (*Id.*)

(e) Claimant P. Cruz-Hernandez's employment has consisted of working at a temporary employment agency where he earns an hourly wage of approximately $8.50 and also working occasionally during the previous eighteen months as a disc

_____

[2] Claimant P. Cruz-Hernandez agreed to speak with officers on June 9, 2012, after he was advised in Spanish of his *Miranda* rights and after he signed a *Miranda* form. (*Id.*, ¶ 24).

7

jockey.[3]  (*Id.*, ¶ 29).

Information gathered in the investigation indicates that the other claimant in this case, Claimant A. Cruz-Hernandez, works–or has worked–as a machine operator.  (*Id.*, ¶ 30).  Moreover, additional information acquired since the government filed its Verified Complaint establishes that Claimant A. Cruz-Hernandez is the subject of deportation proceedings with U.S. Immigration and Customs Enforcement ("ICE").  The redacted Record of Deportable/Inadmissible Alien is attached as Exhibit A.  According to ICE records, Claimant A. Cruz-Hernandez told ICE officials on or about April 30, 2012, that he "has no equities in the United States."  (Ex. A, at p. 2).

B.    Forfeiture Proceedings

Pursuant to 18 U.S.C. § 983(a)(1)(A)(i), the DEA commenced an administrative forfeiture proceeding against the defendant currency by sending notice to the Claimants and publishing notice in the *Wall Street Journal*.  On October 5, 2012, Claimants filed a claim pursuant to § 983(a)(2), which

_____

[3]  Rafael Bautista ("Bautista"), an additional occupant of the Kemble residence, spoke with officers on June 9, 2012, after officers first advised Bautista in Spanish of his *Miranda* rights and after Bautista's signed a *Miranda* form.  (*Id.*, ¶ 21).  Bautista corroborated Claimant P. Cruz-Hernandez's statements in key respects.  First, according to Bautista, armed intruders entered the Kemble residence in the early morning of June 9, 2012, and ransacked the home in search of drugs and money.  (*Id.*, ¶ 22).  Second, according to Bautista, there are two safes at the Kemble residence, both of which belong to Claimant A. Cruz-Hernandez.  (*Id.*, ¶ 23).

thereby terminated the administrative forfeiture proceeding and caused the DEA to refer the case to the U.S. Attorney for judicial action. In their October 5, 2012 administrative claim to DEA (attached as Exhibit B), Claimants stated that "documentation substantiating this claim is being collected, compiled, and will be presented at the appropriate time." The U.S. Attorney filed the Government's Verified Complaint against the defendant currency on January 7, 2013, pursuant to § 983(a)(3) and Rule G(2).

On January 8, 2013, the Government sent notification to Claimants and their counsel (attached as Exhibit C), which explains that Claimants had 35 days in which to contest the judicial forfeiture by filing a verified claim pursuant to Rule G(5)(a). The deadline for filing the verified claim was February 12, 2013.

On February 11, 2013, Claimants filed a "Formal Claim[,] Drug Enforcement Administration Forfeiture" ("Verified Claim").[4] (Doc. 7). With respect to Claimants' interest in the defendant currency, the Verified Claim stated only that Claimants are "owners of all $271,080 " and "have a lawful, legitimate and rightful interest in the property as it consists of wages earned

---

[4] In their February 11, 2013 Verified Claim, the Claimants state that they "hereby submit a formal claim with the Drug Enforcement Administration Forfeiture Counsel." Claimants' description of their submission appears to be in error since the Verified Claim was instead filed with the Court in response to the Verified Complaint filed by the U.S. Attorney.

and saved by claimants over a period of several years." (*Id*, ¶¶ 1, 2). These unsubstantiated purported claims in the Verified Claim are insufficient as a matter of law (as discussed below in Section III(A)), and contradict information previously provided by the Claimants themselves. For example:

(1)  Despite his supposed lack of assets as of April 30, 2012, (Ex. A, at p. 2), Claimant A. Cruz-Hernandez then stated under oath to the Court on February 11, 2013, that the defendant currency seized on June 9, 2012, was supposedly his earnings and savings derived "over a period of several years." (Doc. 7, ¶ 2).

(2)  Claimant P. Cruz-Hernandez told law enforcement on June 9, 2012– just hours after officers searched his residence–that the black safe was not his and that he had no idea what was inside the black safe. (Doc. 1, ¶¶ 27, 28). However, Claimant P. Cruz-Hernandez now tells the Court under oath the defendant currency belongs to him. (Doc. 7).

(3)  Despite telling law enforcement on June 9, 2012, that his employment has consisted of temporary work at $8.50 per hour and occasional work as a disc during the prior eighteen-month period (Doc. 1, ¶ 29), Claimant P. Cruz-Hernandez now tells the Court under oath that he has somehow amassed $271,080.00 in defendant currency (Doc. 7) even though, according to Claimant P. Cruz-Hernandez, he apparently knew nothing about the defendant currency in his brother's black safe. (Doc. 1, ¶¶ 27, 28).

In its notice on January 8, 2013, (Ex. C), the government also notified Claimants and their counsel that, pursuant to Rule G(5), Claimants must serve and file within 21 days after filing their Verified Claim: (1) an answer to the Government's Complaint; or (2) a motion under Rule 12. Claimants received this

notice on January 10, 2013, according to the certified mail return receipt, attached as Exhibit D.  The deadline for filing an answer (or a motion under Rule 12) was March 4, 2013, however, Claimants have failed to answer the government's Verified Complaint.

On February 13, 2013, pursuant to Supplemental Rule G(6)(a), the government served Claimants with its First Set of Special Interrogatories and notified Claimants and their counsel that Claimants must serve and file their response within 21 days.  (Letter and Special Interrogatories attached as Exhibit E).  Claimants received this notice on February 14, 2013, according to the certified mail return receipts, attached as Exhibit F.  Among the inquiries into the Claimants' identity and relationship to the defendant currency, the Special Interrogatories required Claimants to:  explain their acquisition of the defendant currency, including providing all relevant dates, transactions, payors, *etc.*; explain the information on the apparent drug ledger found with the defendant currency; and identify (but not produce) relevant witness and documents to support their purported claims.  The deadline for Claimants to respond to the Special Interrogatories was March 6, 2013.  No response has been received to date.

III.   ARGUMENT

    A.   The purported claims do not comply with the requirements in Rule G(5)(a) and, therefore, must be struck.

In a civil forfeiture proceeding, a claimant must demonstrate standing. *United States v. One-Sixth Share of James J. Bulger, etc.*, 326 F.3d 36, 40 (1st Cir. 2003) (citing *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999)).  Civil forfeiture standing has both constitutional (Article III) and statutory aspects (Rule G(5) and G(6)).  *United States v. U.S. Currency in the Amount of $103,387.27*, 863 F.2d 555, 560 n.10 (7th Cir. 1988).  To establish Article III Standing, "a claimant must demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal court." *United States v. Funds in the Amount of $228,390*, 1996 WL 284943, * 1 (N.D. Ill.) (quoting *United States v. $38,000 in U.S. Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987)).

Statutory standing "is established through strict compliance with Supplemental Rules G(5) and G(6)." *United States v. Vehicle 2007 Mack 600 Dump Truck, VIN1M2K189C77M036428*, 680 F. Supp. 2d 816 (E.D. Mich. 2010). *See United States v. $12,126.00 in U.S. Currency*, 337 Fed. Appx. 818, 819 (11th Cir. 2009).  Supplemental Rule G(5)(a)(I) provides:

A person who asserts an interest in the defendant property may

contest the forfeiture by filing a claim in the court where the action is pending. The claim must:

> (A)   identify the specific property claimed;
> (B)   identify the claimant and state the claimant's interest in the property;
> (C)   be signed by the claimant under penalty of perjury; and
> (D)   be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D).

If claimants fail to comply with Supplemental Rule G(5), the government may move to strike their claim pursuant to Supplemental Rule G(8)(c)(i)(A).

To have statutory standing, a claimant must assert a claim as set forth in Rule G(5) and must "state [his] interest in the property" when filing a claim. *United States v. $114,031.00 in U.S. Currency*, 284 F.App'x. 754, 756 (11th Cir. 2008). This compliance with the statutory requirement is mandatory. *Id.* (citation omitted). *See United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1118-19 (9th Cir. 2004) (recognizing that the danger of false claims in forfeiture proceedings is substantial, so courts must demand more than conclusory or hearsay allegations of some interest in the property).

A claimant's "bald assertions of an ownership interest or possessory interest at the time of seizure, if lacking in evidentiary support, are insufficient to establish the requisite legal interest." *United States v. $271,070.00 in United States Currency*, 1997 WL 94722, at *4 (N.D. Ill.). *See also United States v. $304,050.00 in U.S. Currency*, 2012 WL 4953126, *2 (M.D. Fla. Oct. 17, 2012)

13

(claimant's verified claim was stricken because "[c]laimant's assertion that he

is 'the [t]rue and [r]ightful owner of' the property is a conclusory allegation and

is not entitled to the presumption of truthfulness" and is therefore "nothing more

than a naked assertion of ownership"); *United States v. 208 Burberry Handbags*,

2012 WL 5398676, *7 (W.D.N.Y.); *United States v. $39,557 in U.S. Currency*, 683

F. Supp. 2d 335, 339 (D.N.J. 2010) (deficient claim when it contained only a bald

assertion of ownership); *United States v. One 1971 Rolls Royce Cornice VIN#*

*CRH 11760*, 1988 WL 20089, at *2 (N.D. Ill.) (stating that a "bald assertion of

ownership without more, is insufficient to demonstrate standing").

Although courts differ about what information is sufficient to identify a

claimant's interest in property, a claimant bears the burden of establishing

standing and, at a minimum, must allege ownership and provide some evidence

of that purported ownership.  *See United States v. $487,825 in U.S. Currency*,

484 F.3d 662, 665 (3rd. Cir. 2007) (claim deficient because it contained no

description of claimant's interest in the property).  A recent decision from the

Southern District of Indiana (concerning a claimant's burden to provide some

evidence of ownership to support claim) is instructive:

> Case law has determined that strict compliance with the rule's
> requirement of a statement of interest in the property means that
> the claimant should state "how he obtained possession of the
> currency, including, but not limited to, the person(s) from whom he
> received the currency, the date of the receipt, the place of the
> receipt, and a description of the transaction which generated the

currency."

*United States v. $196,969.00 in U.S. Currency*, 2012 WL 4128035, *2-3 (S.D. Ind. Sept. 20, 2012) (citing *United States v. $134,750 in U.S. Currency*, 2010 WL 1741359, *3 (D. Md).

In this case, Claimants offer nothing to substantiate their purported claims to the defendant currency. Over five months have now passed since Claimants announced in their administrative claim to DEA (attached as Exhibit B), that supposed "documentation substantiating this claim is being collected, compiled, and will be presented at the appropriate time." However, the appropriate time, as mandated by the Supplemental Rules, has now elapsed. Instead, Claimants have remained completely silent, offering no explanation as to how they obtained possession of the currency, including, from whom they received the currency, the date of the receipt, the place of the receipt, and a description of the transaction which generated the currency. Rather, Claimants make only conclusory assertions of their purported claims to the currency. To compound this deficiency, Claimants' conclusory assertions are ever-shifting and contradictory, as detailed above in Section II(B). Because Claimants have not established standing, their purported claims must be struck.

      B.      Claimants' failure to file an answer violates Rule G(5)(a) and 18 U.S.C. § 983(a)(4)(B), and therefore, the purported claims must be struck.

In addition to filing deficient claims, Claimants have not filed an answer to the Verified Complaint as required by Supplemental Rule G(5)(b), the Court-issued Warrant, and 18 U.S.C. § 983(a)(4)(B). Supplemental Rule G(5)(b) requires claimants to file answers within 21 days after filing claims. 18 U.S.C. § 983(a)(4)(B), in turn, requires that a "person asserting an interest in seized property . . . shall file an answer to the Government's complaint for forfeiture not later than 20 days after the date of the filing of the claim." Moreover, the government sent a courtesy notice to the Claimants on January 8, 2013, which expressly states that "an answer to the complaint . . . must be filed no later than twenty-one (21) days after filing the verified claim (Ex. C, at pp. 1,3, 4, 6), a notice which the Claimants received on January 10, 2013 (Ex. D).

Despite receiving ample notice, Claimants have failed to answer the complaint. A claimant must deny the essential allegations of the government's complaint or they will be deemed admitted. *United States v. $41,580.00 in U.S. Currency*, 253 Fed. App. 880, 881-82 (11th Cir. 2007); *United States v. One 1996 Vector M12*, 442 F.Supp.2d 482, 486 (S.D. Ohio 2005) ("the purpose of an answer is set forth the claims and defenses which the claimant believes support his assertion of claim to the property").

16

Moreover, a claimant's failure to file a timely answer denies standing to the claimant. The Supplemental Rules provide that a claim may be stricken "for failing to comply with Rule G(5)," which includes the rule requiring the filing of an answer: Rule G(8)(c)(i)(A). Indeed, "federal courts in analogous circumstances have routinely stricken claims" that are not accompanied by a required answer.[5] *United States v. 40 Acres of Real Property*, 629 F.Supp.2d 1264, 1273-74 (S.D. Ala. 2009) (Rule G(5) must be strictly enforced and thus claimant who filed claim but no answer lacked statutory standing); *United States*

---

[5] *See, e.g., United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 2009 WL 3358965 (D.D.C.) (granting government's motion to strike claims for non-compliance with Rule G(5), including where claimants did not file an answer to the government's complaint); *United States v. Approximately Twenty Mexican Gold Coins*, 2009 WL 1870892, at *1 (D. Kan.) (dismissing claim for failure to state to comply with Rule G(5), in part, because claimant failed to file an answer); *United States v. $19,840.00 in U.S. Currency More or Less*, 552 F.Supp.2d 632, 635–36 (W.D.Tex. 2008) (claimant who timely filed claim was properly defaulted for filing answer two days late); *United States v. $159,040.00 in U.S. Currency*, 517 F.Supp.2d 437, 439–40 (D.D.C.2007) (claimant lacked statutory standing to challenge seizure of *res* because he did not file a timely answer); *United States v. 328 Pounds More or Less, of Wild American Ginseng*, 347 F.Supp.2d 241, 249 (W.D.N.C.2004) (dismissing claim where claimant failed to comply with Supplemental Rules requirements, including filing of an answer); *United States v. Ford 250 Pickup 1990 VIN No. 1FTHX26M1LKA69552*, 980 F.2d 1242, 1245 (8th Cir.1992) (rejecting claimant's contention that its claim "is detailed enough to serve as an answer to the complaint as well" where Supplemental Rules unambiguously require both claim and answer); *United States v. $288,914 in U.S. Currency*, 722 F.Supp. 267, 270–71 (E.D. La.1989) (Supplemental Rules require that answer be stricken and default judgment be entered against claimant who filed answer 20 days after deadline, because "a claimant must strictly comply with the pleading requirements" embodied in those rules).

*v. Commodity Account No. 549 54930 at Saul Stone & Co.*, 219 F.3d 595, 598 (7th Cir. 2000) (even though claimant argued that his unverified claim obviated need for answer, "it was proper for the district court to insist upon a timely answer" because strict compliance with Supplemental Rules is required); *United States v. $29,540.00 in U.S. Currency*, 2013 WL 308897, * 6 (D. Mass. February 28, 2013) (claim stricken, in part, because claimant filed a claim but failed to file an answer, as required by Rule G(5)(b) and 18 U.S.C. § 983(a)(4)(B)).

In this case, the deadline has passed for Claimants to file their Answer. As numerous courts have concluded consistently when presented with such non-compliance with Rule G(5), Claimants therefore lack statutory standing to contest this forfeiture and their claims must be struck.

    C.    Purported claims must be struck because Claimants have failed to respond to Special Interrogatories as required by Supplemental Rules G(6)(b) and G(8)(C).

Finally, Claimants have failed to respond to Special Interrogatories as required by Supplemental Rule G(6)(b). Pursuant to Supplemental Rule G(6)(a), the United States served Special Interrogatories on Claimants on February 13, 2012, (Ex. E), which Claimants received on February 14, 2013 (Ex. F). Supplemental Rule G(6)(b) requires that answers or objections to special interrogatories be served within 21 days after the interrogatories were served.

The government's use of special interrogatories under Rule G(6) is

specifically designed to obtain information relevant to a claimant's standing to even assert a claim. Thus, Rule G(6) special interrogatories serve a vital gatekeeping function in forfeiture cases by filtering out improper claims at the early stages of proceedings. *See United States v. $14,800.00 in U.S. Currency*, 2012 WL 4521371, *5 (D. Md.) ("Rule G(6) interrogatories serve an essential function in the asset forfeiture context by allowing the Government to test a claimant's bare assertion of standing against an evidentiary basis."); *$133,420 in U.S. Currency*, 627 F.3d 629, 642-43 (9th Cir. 2012) (special interrogatories may be used to "test the veracity of [claimant's] claim of ownership"); *United States v. $39, 556, More or Less in U.S. Currency*, 2008 WL 2901318, *2 (D.N.J.); *United States v. $101,000 in U.S. Currency*, 2011 WL 3563101, *3 (C.D.Ill.).

Moreover, pursuant to Rule G(8)(c), a claim may be struck for failing to respond to Special Interrogatories. *United States v. $29,540.00 in U.S. Currency*, 2013 WL 308897, *6 (D. Mass. February 28, 2013) (claim stricken, in part, because claimant "did not respond to the special interrogatories by the deadlines and did not ask for an extension of time" and "therefore fails to establish statutory standing by failing to adhere to the procedural requirements of the Supplemental Rules"); *United States v. $12,812.00 in U.S. Currency, 2012 WL 4062466, *2 (S.D. Ohio)* (claim stricken pursuant to Rule G(8)(c) because claimant did not respond to interrogatories and thereby failed

19

to comply with Rule G(6)); *United States v. $15,000.00 in U.S. Currency,* 2012 WL 3000649, *2 (S.D.Miss.) (granting motion to strike claim and answer because claimant failed to timely respond to special interrogatories); *United States v. $27,970.00 in U.S. Currency,* 2010 WL 933762, at *1 (S.D.Ga.) (striking claim and answer because claimant failed to respond to special interrogatories).[6]

To date, the government has received no response from Claimants to the Special Interrogatories, which were served over a month ago. Accordingly, the Court should strike their claims.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court grant its Motion to Strike the Purported Claims of Abraham N. Cruz-Hernandez and Pedro Cruz-Hernandez.

---

[6] For additional examples of claims struck as a result of claimants' failures to respond to special interrogatories, *see, e.g., United States v. $25,800 Currency*, 2100 WL 2003385, *2 (D. Me.); *United States v. 2006 Dodge Charger*, 2011 WL 2601028 *2 (E.D. Tenn.); *United States v. $40,449 in U.S. Currency*, 2012 WL 234421, * 1 (W.D. Okla.); *United States v. $27,970 in U.S. Currency*, 2010 WL 933762, *1 (S.D. Ga.); *United States v. Approximately $24,600 in U.S. Currency*, 2012 WL 458412, *1 (E.D. Cal.); *United States v. $55,564 in U.S. Currency*, 2010 WL 5475815, *2 (D.N.J.).

Respectfully submitted,

GARY S. SHAPIRO
United States Attorney


 /s/ Matthew S. Ebert
MATTHEW S. EBERT
 Assistant United States Attorney
 219 South Dearborn Street, 5th Floor
 Chicago, Illinois 60604
 (312) 353-5354


Dated:  March 20, 2013