# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 CV 0126 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| FUNDS IN THE AMOUNT OF ) | |
| $271,080.00, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| ) | |
| PEDRO CRUZ-HERNANDEZ and ) | |
| ABRAHAM CRUZ-HERNANDEZ, ) | |
| ) | |
| Claimants. ) | |

## MEMORANDUM OPINION & ORDER

This case is an *in rem* forfeiture action for $271,080 in cash seized from a safe in a minivan parked in the driveway of a North Chicago residence. The government believes that the funds were used in narcotics trafficking and seeks forfeiture of the funds under 21 U.S.C. § 881(a)(6). Pedro Cruz-Hernandez and Abraham Cruz-Hernandez argue that they are the rightful owners of the funds and were involved in no criminal activity. They submitted a claim for release and return of the funds.

Now before the court is the government's motion for summary judgment. The government argues that the claimants lack standing to contest forfeiture of the currency. In the alternative, the government seeks summary judgment because the funds were used (or intended to be used) to facilitate narcotics trafficking. For the reasons discussed below, the motion is denied.

# I. BACKGROUND FACTS

The following facts are not in dispute unless otherwise indicated.[1] The claimants agree "that the basic facts are not in dispute, *i.e.*, that law enforcement officers seized and searched a black safe from a locked vehicle and uncovered $271,080.00 in U.S. Currency." (Claimants' Resp. 2-3, ECF No. 45.)

At about 1:00 a.m. on June 9, 2012, North Chicago Police Department (NCPD) officers responded to a 911 call reporting an apparent home invasion at 2124 Kemble Avenue in North Chicago, Illinois. Upon their entry into the residence, NCPD officers discovered that the apparent intruders were not present. While inside the residence, NCPD officers say they observed in plain view a 9mm handgun, plastic bags, cannabis, a digital scale with white powder residue, a knife, and zip-tie plastic fasteners.

The officers observed three vehicles parked in the driveway behind the residence, including a red Chevrolet minivan. A Lake County Deputy Sheriff, who is also a K-9 handler, and a canine owned by the Lake County Sheriff's Department, conducted a narcotic-odor investigation of the exterior of the three vehicles. The canine alerted to the presence of narcotics on the van.[2]

Within the rear of the minivan, NCPD officers observed a black safe in plain view through the windows. A circuit-court judge in Lake County issued a warrant to search the

---

[1] Claimants object to the government's Local Rule 56.1(a)(3) statement of material facts, arguing that the government (1) fails to provide specific references; (2) provides incorrect citations; and (3) "masquerades" inferences as alleged facts. The claimants argue that the court should deny the motion for summary judgment on these bases. The court declines to do so, but considers only the facts that have adequate support in deciding this motion.

[2] The Claimants dispute the government's assertions that the investigation was a "narcotic-odor investigation" and that the canine alerted to the presence of narcotics. Claimants do not explain the basis of their contrary belief. Claimants' citation to their statement of additional facts is unavailing.

residence and minivan and seize evidence, including cash and safes. In addition to the search warrant, claimant Pedro Cruz-Hernandez and a co-resident of 2124 Kemble signed a consent form for NCPD officers to search the residence.

Officers conducted a search of the residence, minivan, and safe. The officers found $271,080 in cash in the safe, bundled together with elastic ponytail rubber bands in increments labeled "$5,000." NCPD officers found a handwritten ledger inside the safe that appears to contain dollar amounts, dates, and names.

When questioned by North Chicago police on June 9, 2012 about the safe, Pedro Cruz-Hernandez said: "I honestly don't know what is inside." (Tr. of Interview 16, ECF No. 43-5). The police inquired: "[Y]ou didn't know that there was money inside? It's not yours?" and Pedro Cruz-Hernandez replied, "It is not mine, no, it isn't." In a deposition taken in conjunction with this case, Pedro Cruz-Hernandez confirmed under oath that his answers on June 9, 2012 "were truthful and complete." (Dep. of Pedro Cruz-Hernandez 43, ECF No. 43-9.)

Claimant Abraham Cruz-Hernandez has also made statements indicating that the money in the safe was not his. He filed an Application for Cancellation of Removal in removal proceedings before the Immigration Court for the U.S. Department of Justice, Executive Office of Immigration Review. That application states that from December 2004 to August 2012, Abraham Cruz-Hernandez resided at 2124 Kemble. The application states that Abraham Cruz-Hernandez's only assets are $2,000 in cash, stocks, or bonds that he owns jointly with his spouse. In a deposition, Abraham Cruz-Hernandez stated under oath that the information he provided in his application was true, accurate, and complete. (Dep. of Abraham Cruz-Hernandez 19, ECF No. 43-10.)

On February 11, 2013, the claimants filed a formal claim for the seized $271,080. The claim states that the claimants "are the lawful, legitimate and rightful owners of all $271,080.00 U.S. Currency seized" and that "Claimants were not involved in any criminal activity whatsoever. If any criminal activity occurred, claimants were innocent owners and did not know of the conduct giving rise to the forfeiture." (Claim ¶¶ 1, 3, ECF No. 7.) Both claimants signed the claim "[u]nder oath and being subject to the penalties of perjury." (*Id.* at 2.) The claimants also submitted affidavits claiming ownership of the funds.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

Under Supplemental Rule G of the Federal Rules of Civil Procedure, "the government may move to strike a claim . . . because the claimant lacks standing." Fed. R. Civ. P. Supp. G(8)(c)(i). The government may present this standing-based challenge in the form of a motion for summary judgment. Fed. R. Civ. P. Supp. G(8)(c)(ii)(B); *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 653 (7th Cir. 2013). "The government can move to strike a

claim to property on the ground that the claimant has no interest in it . . . ." *$574,840*, 719 F.3d at 653.

When claimants file a claim of ownership under Supplemental Rule G(5)(a)(i) of the Federal Rules of Civil Procedure, their claim is evidence; "[i]t must be signed under penalty of perjury and identify the claimant and the nature of his interest." *Id.* The burden then shifts to the government to produce evidence that the claim is invalid. *See id.*

### III. ANALYSIS

**A.     Standing**

The general requirement for the claimant to show Article III standing is clear: "In a response to a summary judgment motion . . . [the claimant] must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and citations omitted). The court must determine whether a "fair-minded jury" could find that the claimant has standing based on the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "At the pleading stage Article III standing is something to be alleged, not proved. All that must be alleged is an injury, personal to the person seeking judicial relief, that the court can redress, an injury such as the injury inflicted by the government when it has got hold of money that belongs to the person and refuses to return it." *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 651 (7th Cir. 2013).

Supplemental Rule G imposes additional statutory standing requirements on a prospective claimant beyond the usual Article III standing requirements. "[S]atisfaction of the requirements that Rule G(5) imposes on the claimant establishes the claimant's standing under Article III *a fortiori*, for the rule requires more than the simple allegation of standing that, unless

5

challenged, is all that Article III requires." *United States v. $196,969.00 U.S. Currency*, 719 F.3d 644, 646 (7th Cir. 2013). Under Rule G(5)(a), a claim must: "(A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property; (C) be signed by the claimant under penalty of perjury; and (D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D)." Fed. R. Civ. P. Supp. R. G(5)(a)(i). "Some cases have required the claimant to provide more evidence than Rule G(5)(a)(i) requires . . . [but t]he cases don't explain where such a requirement comes from, and [the Seventh Circuit has] expressed skepticism . . . that the requirement is proper." *$574,840*, 719 F.3d at 653. *But see, e.g.*, *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638-39 (9th Cir. 2012) ("[I]n a civil forfeiture action, a claimant's bare assertion of an ownership or possessory interest, in the absence of some other evidence, is not enough to survive a motion for summary judgment. . . . A claimant asserting an ownership interest in the defendant property, therefore, must also present some evidence of ownership beyond the mere assertion in order to survive a motion for summary judgment.").

The government does not dispute that the claim submitted by claimants satisfies the requirements of Rule G(5)(a). And once the statutory standing requirements Rule G(5)(a) are satisfied, so are the constitutional standing requirements of Article III. *$196,969*, 719 F.3d at 646. The Seventh Circuit explains the rationale for not requiring more of the claimant: "Because the claim was verified it was evidence, like an affidavit. The government was free to respond with evidence that [claimants] had no rights in the money but it could not simply demand that [they] prove, beyond the claim itself if compliant with Rule G(5), that [they] had standing—especially that [they] 'prove' Article III standing." *Id.* In a companion case to *$196,969*, the Seventh Circuit stated: "The government can move to strike a claim to property on

6

the ground the claimant has no interest in it, but it cannot just say to him: prove it's your property." *$574,840*, 719 F.3d at 653. The court concludes that under Seventh Circuit precedent, the claim and the accompanying affidavits are sufficient for the claimants to show Article III standing and the additional statutory standing requirements imposed by Rule G(5)(a).

The government argues that "a person who disclaims any interest in the property lacks prudential standing." (Gov't Mem. 15, ECF No. 43.) Because the claimants previously disclaimed ownership of the funds in sworn statements, the government argues that they are outside the "zone of interests" of the civil forfeiture statute and therefore lack prudential standing. *See United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 982 F. Supp. 2d 830, 834 (N.D. Ill. 2013) (holding that creditors outside the "zone of interests" of the civil forfeiture statute could not establish prudential standing).

"[O]nly innocent owners are within the zone of interests protected by the civil forfeiture statute." *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 892 F. Supp. 2d 1038, 1052 (N.D. Ill. 2012) (construing *United States v. $500,000.00 in U.S. Currency*, 519 F.3d 402, 404 (5th Cir. 2009)). The Seventh Circuit has yet to address whether a claimant takes himself out of the "zone of interests" if he previously disclaims interest in property. But the Seventh Circuit has held that "[t]he legislative history of forfeiture law indicates that a rather expansive 'zone of interests' is protected by the innocent owner provision." *United States v. 5 S 351 Tuthill Rd., Naperville, Ill.*, 233 F.3d 1017, 1023 (7th Cir. 2000).

A court in this district has previously held: "Given the conflicting out-of-circuit case law and the Seventh Circuit's holding in *5 S 351 Tuthill Rd.*, the Court doubts whether a claimant who has statutory standing because it possesses a specific interest in the defendant property could be considered to lack prudential standing on the ground that it does not qualify as an

7

innocent owner." *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 892 F. Supp. 2d 1038, 1052 (N.D. Ill. 2012); *see also Tuthill*, 233 F.3d at 1023 ("In light of the other branches' calls for rational application of the useful tool of civil forfeiture, we think it particularly imprudent to adopt without a specific reason a [prudential-standing] test that appears to increase the harshness of the forfeiture remedy. So we will hew to the traditional 'actual stake in the outcome' test in analyzing whether [a claimant] has standing to challenge the government in this case.").

The court concludes, in accordance with *R.J. O'Brien* and *Tuthill*, that the claimants' fulfillment of the constitutional and statutory standing requirements of Article III and Supplemental Rule G is sufficient for claimants to fall within the zone of interests protected by the civil forfeiture statute. Accordingly, the court denies the government's motion for summary judgment as to standing.

**B.  Forfeitability**

The government argues that it can establish by a preponderance of the evidence that the funds are forfeitable because "there is a substantial connection between the currency and drug trafficking." (Gov't Mem. 18, ECF No. 43.) The claimants have submitted affidavits stating that the funds were not used or intended to be used in drug trafficking and that the claimants earned the funds by working at various jobs over the course of several years. The claimants' affidavits also state that neither claimant has ever been in the business of selling drugs and that no narcotics have come into contact with the safe, the funds, or the minivan in which police found the safe.

In *United States v. Funds in Amount of One Hundred Thousand and Twenty Dollars*, the Seventh Circuit held that the claimants' affidavit was sufficient to overcome summary judgment

on the forfeitability issue. It explained that the "affidavit testimony is sufficient to create a dispute of material fact. . . . If believed, [the] affidavit testimony provides the trier of fact with a basis for finding that [claimant] legally accrued (or, at least, *could have* legally accrued) the Funds. . . . Perhaps the government's evidence . . . seemed weightier than [the] affidavit testimony. But, as stated above, such determinations are properly left to the trier of fact." 730 F.3d 711, 718-19 (7th Cir. 2013); *see id.* at 717 ("To reject testimony because it is unsubstantiated and self-serving is to weigh the strength of the evidence or make credibility determinations—tasks belonging to the trier of fact."); *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003) ("We have routinely found that a nonmoving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion.").

The court concludes that there is a dispute of material fact about whether the claimants legitimately acquired the funds. That dispute precludes summary judgment in the government's favor on the issue of forfeitability.

## IV. RULE TO SHOW CAUSE

Although the court holds that the claimants have established standing, the court has serious doubts that claimants will be able to demonstrate their ownership interest in the funds at trial or in a summary judgment proceeding on the question of ownership. The Seventh Circuit generally allows a "self-serving" affidavit to create questions of fact to overcome summary judgment, but that rule has a significant exception. In *$100,120*, the Seventh Circuit warned: "[W]e do not allow litigants to manufacture material fact questions by affidavit testimony that contradicts prior sworn testimony." 730 F.3d at 718.

Here, Claimants do not contest that they previously disclaimed ownership of the funds. In sworn depositions, both claimants agreed that their previous disclaimers of the funds were

9

truthful.  The only countervailing evidence claimants cite is their claim itself.  Claimants cannot rely solely on their affidavits to establish their ownership interest in the funds, as those affidavits were contradicted by their prior sworn testimony.

Although the government cannot prevail on their motion for summary judgment based on standing, the court finds it unlikely that the claimants have sufficient evidentiary support to overcome summary judgment on the merits of their claim of ownership.  The court orders the claimants to show cause why the court should not grant summary judgment in favor of the government for lack of evidentiary support for their ownership claim.  *See Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807 (7th Cir. 2000) ("A district court is permitted to enter summary judgment sua sponte if the losing party has proper notice that the court is considering granting summary judgment and the losing party has a fair opportunity to present evidence in opposition."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.").

## V. Conclusion

For the reasons stated above, the government's motion for summary judgment is denied.  Claimants are ordered to show cause within 21 days why the court should not grant summary judgment in favor of the government on the merits of their ownership claim.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED:   September 18, 2014